# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ESTATE OF RICHARD BROOKES HIBBARD,**

                **Plaintiff,**

**v.**                                    **Case No:   6:18-cv-63-Orl-31KRS**

**JEANNE HIBBARD and ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA,**

                **Defendants.**

_____

## ORDER

      This matter comes before the Court without a hearing on the Motion to Dismiss (Doc. 36) filed by Defendant Allianz Life Insurance Company of North America (henceforth, "Allianz"), the response in opposition (Doc. 42) filed by the Plaintiff, the Estate of Richard Brookes Hibbard (the "Estate"), and the reply (Doc. 48) to that response from Allianz.

## I.      Background

      Richard Brookes Hibbard died on October 3, 2016.   At the time of his death, he was a resident of Florida.   Shortly thereafter, his estate was opened in Volusia County.   Five years earlier, he had purchased an annuity from Defendant Allianz Life Insurance Company of North America ("Allianz"), naming his then-wife, Jeanne Hibbard, as the beneficiary.     In July 2013, the Hibbards were divorced in New Hampshire.

      Richard Brookes Hibbard never changed the beneficiary designation on the annuity. Shortly after his death, Allianz paid approximately $97,000 in death benefits to Jeanne Hibbard. On January 10, 2018, the Estate filed the instant suit claiming, *inter alia*, that Florida Statute

§ 732.703 had automatically revoked the beneficiary designation of the annuity at the time of the divorce, meaning that Allianz should have paid the annuity proceeds to the Estate, not to Jeanne Hibbard.

In its Amended Complaint (Doc. 9), the Estate asserts three claims against Allianz: violation of Fla. Stat. § 732.703 (Count III); negligence (Count IV); and breach of fiduciary duty (Count V). All three claims are founded on the Estate's contention that the beneficiary designation of Jeanne Hibbard was revoked by Fla. Stat. § 732.703. By way of the instant motion, Allianz seeks dismissal of all three claims against it.

## II.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory

allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. Analysis

### A. The Contract

As an initial matter, the Plaintiff takes issue with the Court considering the written contract that established the annuity (the "Annuity Contract") (Doc. 36-1) in connection with the instant motion. The Plaintiff did not attach the Annuity Contract to the Complaint. Generally, on a Rule 12 motion, the Court is limited to consideration of the information included within the four corners of the complaint and any exhibits attached to it. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); Fed.R.Civ.P. 10(c). Consideration of additional material may require that the court convert the motion to one for summary judgment.

However, the court may consider a document attached to a motion to dismiss without converting it to a motion for summary judgment if the document is (1) central to the plaintiff's claim and (2) undisputed. *Id.* Allianz attached a copy of the Annuity Contract to its motion to

dismiss. That document contains the beneficiary designation at issue and is intended to control the disposition of the $97,000 that is the subject of the Estate's claims against Allianz. As such, it is clearly central to the Estate's claims. And though the Estate complains of not having seen the Annuity Contract before, it does not challenge its authenticity. In light of the foregoing, the Court finds that it can consider the Annuity Contract without having to convert the instant motion to one for summary judgment.

> B.   Beneficiary Designation

It is undisputed that, prior to their divorce, Richard Brookes Hibbard named Jeanne Hibbard as the beneficiary of the annuity he purchased from Allianz and that he did not change that designation prior to his death. Florida Statute § 732.703 provides, in pertinent part, that

> A designation made by or on behalf of the decedent providing for the payment or transfer at death of an interest in an asset to or for the benefit of the decedent's former spouse is void as of the time the decedent's marriage was judicially dissolved or declared invalid by court order prior to the decedent's death, if the designation was made prior to the dissolution or court order. The decedent's interest in the asset shall pass as if the decedent's former spouse predeceased the decedent.

Fla. Stat. § 732.703(2). Based on this statute, the Estate contends that Jeanne Hibbard was no longer a beneficiary of the annuity when Richard Brookes Hibbard died and was not entitled to the $97,000 paid to her by Allianz.

However, Section 732.703 does not apply to void such beneficiary designations "[i]f the governing instrument is governed by the laws of a state other than this state". Fla. Stat. § 732.703(4)(g). The statute defines "governing instrument" as "any writing or contract governing the disposition of all or any part of an asset upon the death of the decedent." Fla. Stat. § 732.703(1)(e). Allianz asserts, and the Estate does not seriously dispute, that the Annuity Contract is the "governing instrument" in regard to the annuity. Allianz argues that the Annuity

Contract is governed by New Hampshire law, and therefore the designation of Jeanne Hibbard as beneficiary was not voided by Fla. Stat. § 732.703.   The Estate raises a number of arguments in response.

> 1.     True or False Conflict

Before beginning the conflict-of-law analysis, the Estate contends that the instant situation involves a "false conflict" rather than a "true conflict".   Under Florida law, a true conflict exists when two or more states have a legitimate interest in a particular set of facts in litigation and the laws of those states differ or would produce a different result; a false conflict exists where the laws of the two jurisdictions are the same or would produce the same outcome under the facts of the case or when the policies of one jurisdiction would be furthered by the application of its laws while the policies of the other jurisdiction would not be advanced by the application of its laws. *See Chapman v. DePuy Orthopedics, Inc.*, 760 F.Supp.2d 1310, 1313 (M.D. Fla. 2011) (citing cases).   Where a false conflict exists, choice of law analysis is not required.   *James River Ins. Co. v. Med Waste Management, LLC*, 46 F.Supp.3d 1350, 1356-57 (S.D. Fla. 2014) (citing cases).

However, the Court finds that there is no avoiding the choice of law analysis here.   The plain language of Fla. Stat. § 732.703 provides that its beneficiary-voiding provisions do not come into play unless Florida law applies; the Florida Legislature did not include exceptions for situations where, for example, another state has a similar statute or has less of an interest in the resolution of the dispute than Florida does.

> 2.     Choice of Law

In the alternative, the Estate argues that the Annuity Contract is governed by Florida law, not New Hampshire law, and therefore Fla. Stat. § 732.703(2) applied to void Jeanne Hibbard's designation as the beneficiary.   In a diversity action, a federal court must apply the choice-of-law

rules of the forum state. *See, e.g., Travelers Prop. Cas. Co. of Am. V. Kan. City Landsmen, L.L.C.*, 592 Fed.Appx. 876 881 (11th Cir. 2015). In matters of contract, Florida continues to adhere to the rule of *lex loci contractus. State Farm Mut. Auto Ins. Co. v. Roach*, 945 So.2d 1160, 1163 (Fla. 2006). That rule provides that, in the absence of a contractual provision specifying the governing law, a contract – other than one for the performance of services – is governed by the law of the state in which the contract was made. *Shaps v. Provident Life & Acc. Ins. Co.*, 244 F.3d 876, 881 (11th Cir. 2001).

At this point, all of the evidence that the Court can consider points to New Hampshire as the place where the contract was executed. The annuity application signed by Richard Brookes Hibbard (which was included in the copy of the Annuity Contract attached to the motion to dismiss) showed a street address for him on Lakeside Drive in Bristol, New Hampshire. (Doc. 36-1 at 33). Above his signature, Richard Brookes Hibbard wrote that he was signing the application in Meredith, New Hampshire. (Doc. 36-1 at 37). The letter from Allianz that accompanied the finalized contract, thanking him for purchasing the annuity, showed that it was delivered to the Lakeside Drive address. (Doc. 36-1 at 3). The Estate offers nothing, not even an argument, that the contract was made in Florida. Based on this, the Court would be obligated to find that New Hampshire law governed the Annuity Contract (or, at least, that Florida law did *not* govern it), and that Fla. Stat. § 732.703(2) therefore did not apply to void Jeanne Hibbard's designation as the beneficiary.

However, the Estate argues that the contract was partially performed in Florida[1] -- because some payments were made to Richard Brookes Hibbard there prior to his death – and points out

---

[1] Besides stating that some payments were made in this state, the Estate argues that performance was due in Florida by analogizing annuity contracts to loan agreements, which in the absence of an agreement to the contrary are governed by the law of place where the payments are

- 6 -

that questions related to the manner or method of performance under a contract are governed by the law of the place of performance.  *See Government Employees Ins. Co. v. Grounds*, 332 So.2d 13, 15 (Fla. 1976) (holding that availability of third party bad faith claim by insured tortfeasor against insurer was governed by law of Florida, where insurer should have provided good faith defense for its insured, rather than law of Mississippi, where insurance contract was executed and which prohibited such claims).   But even if one assumes that the Annuity Contract was to be performed in Florida, this line of attack does not aid the Estate.   For purposes of determining whether Section 732.703 applied, and therefore whether Allianz should have paid the Estate rather than Jeanne Hibbard, the issue is whether Florida law governed the Annuity Contract, not whether Florida law governed Allianz's performance under that contract.[2]

The Estate raises several other arguments but, having considered them, the Court finds that, with one exception, they do not merit discussion.   The one exception involves an alleged public policy exception to Florida's normal choice of law rules.   The Estate argues that the existence of Fla. Stat. § 732.703 demonstrates Florida's "paramount public policy" that, post-divorce,

---

due rather than the place where the contract was executed.  *Atlas Subsidiaries of Fla., Inc. v. O. & O., Inc.*, 166 So. 2d 458, 461 (Fla. 2d DCA 1964).   The basis of this rule is that, in the case of a promissory note, the parties are presumed to have contracted with reference to the law of the state where payment is to be made.  *Id.*   The Estate has not cited, and the Court has not found, any cases indicating that this presumption applies where the parties enter into an annuity contract.

[2] In addition, as the Estate itself notes, questions bearing on the interpretation, validity and obligation of contracts are substantive and governed by *lex loci contractus*.  *Goodman v. Olsen*, 305 So. 2d 753, 755 (Fla. 1974).   The question of who is the proper beneficiary of the contract would be a substantive one rather than a matter of performance.  *See Higgins v. West Bend Mut. Ins. Co.*, 85 So. 3d 1156 (Fla. 5th DCA 2012) (stating that first party bad faith claim by insured to recover uninsured motorist benefits was governed by law of place of contracting, as entitlement to such benefits was a substantive question, akin to a coverage dispute, rather than a performance-based question).

> a former spouse should not receive money or assets from his or her
> former spouse simply because the former spouse with the asset
> failed to change a beneficiary designation, or failed to remove his or
> her former spouse's name from a joint account.

(Doc. 42 at 15).   Allowing New Hampshire law to govern the Annuity Contract would, the Estate argues, violate that public policy, and therefore the Court should find that Florida law governs the contract.   However, the Estate provides no case law or similar precedent identifying such a public policy or supporting the result it seeks.   And the Court notes that, in enacting the statute, the Florida Legislature also chose to limit its effect to contracts governed by Florida law, which would inevitably require that Florida courts violate this alleged public policy in regard to out-of-state contracts.

## IV.   Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 36) is **GRANTED**, and the claims against Defendant Allianz Life Insurance Company of North America are **DISMISSED WITH PREJUDICE**.   In addition, it appears that the claims against Jeanne Hibbard are also dependent upon her not being the proper beneficiary of the annuity, and a finding that Fla. Stat. § 732.703(2) did not apply to strip her of that status is also fatal to those claims.   Accordingly, the Plaintiff is **ORDERED TO SHOW CAUSE**, on or before June 22, 2018, why the claims against Jeanne Hibbard should not also be dismissed with prejudice.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 12, 2018.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE